FOR PUBLICATION

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| RICHARD O. THOMPSON, KURT W. THOMPSON, AND KAY ALYSON THOMPSON,    )<br><br>        Plaintiffs,<br>        Counterclaim<br>        Defendants<br><br>v.<br><br>FLORIDA WOOD TREATERS, INC.,<br><br>        Defendant, Counter<br>        Claimant | Civil No. 2006-224 |

FLORIDA WOOD TREATERS, INC. )
)
      Third Party Plaintiff, )
)
         v. )
)
COASTAL SUPPLY, INC. )
)
)
      Third Party Defendant. )
)

**ATTORNEYS**

**Ronald W. Belfon, Esq.**
St. Thomas, U.S.V.I.
> *for Richard O. Thompson, Kurt W. Thompson, and Kay Alyson*
> *Thompson,*

**H.A. Curt Otto, Esq.**
St. Croix, U.S.V.I.
> *for Coastal Supply, Inc.*

**Christian A. Peterson, Esq.**
**Todd H. Newman, Esq.**

**Samuel T. Grey, Esq.**
St. Croix, U.S.V.I.
      *for Florida Wood Treaters, Inc.*


<u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

        Before the Court is the motion of defendant Florida Wood

Treaters, Inc. ("Wood Treaters") for summary judgment. Plaintiffs

Richard O. Thompson, Kurt W. Thompson, and Kay Alyson Thompson

(jointly, the "Thompsons") oppose Wood Treaters' motion.[1]

**I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

        In 1992, William Hedges and Marianne Hedges ("the Hedges")

owned Saint John Lumber, Inc. ("SJL").  By 1992, SJL had incurred

a debt of $515,000, which it owed to Wood Treaters.  In December

of 1992 the Hedges and SJL entered into an agreement with Wood

---

        [1]The Thompsons moved to strike Wood Treaters' summary judgment motion.
That motion to strike was denied.  Any opposition to Wood Treaters' motion was
due no later than November 5, 2009.
        On November 14, 2009, the Thompsons filed a motion for an extension of
time to file an opposition.  The Thompsons further filed an amended motion for
an extension of time on November 16, 2009.
        Also on November 16, 2009, the Thompsons filed a proposed counter
statement of material facts, which notably did not comply with LRCi 56.1(b) in
that it did not respond to Wood Treaters' statement of undisputed facts, but
rather asserted facts the Thompsons claim are undisputed.  The same day, the
Thompsons also filed a motion for leave to file a proposed memorandum in
support of its own motion for summary judgment, and attached several pieces of
supporting evidence.
        By order of the Court, dispositive motions, such as one for summary
judgment, were due no later than October 16, 2009.  The Thompsons were never
granted leave to file any dispositive motions or related documents out of
time.

Treaters to restructure the $515,000 debt (the "Agreement").

Under the Agreement, SJL immediately paid $150,000 in cash to Wood Treaters. SJL also executed a $65,000 promissory note (the "Note" or "Promissory Note"). Pursuant to the Note, SJL promised to repay $65,000 over the course of 15 years, along with 9% annual interest, in monthly installments. The Note was secured by the fixtures and equipment of SJL. Wood Treaters further agreed that it would reduce SJL's debt by $300,000 in exchange for $300,000 worth of preferred stock in SJL. The stock was to pay a 9% dividend, or $27,000, annually.

Specifically, the Agreement provides:

2) As a further condition of the restructuring of this debt, William Hedges and Marianne Hedges shall personally guarantee the executory provisions of the note and agreements relating to the redemption of the preferred stock and payment of the dividends for the stock and the repayment of the $65,000.00 note. That personal guarantee shall be secured by a Mortgage Deed in the amount of $300,000 against the personal residence of the Hedges in favor of Florida Wood. . .
3) The Mortgage Deed which secures the Personal Guarantee shall be subject to certain terms:
    A) The $300,000 mortgage shall bear no interest but the principal amount of the lien shall be increased to add an amount equal to the amount of preferred stock dividend owed but unpaid to Florida Wood. . . .
    C) A default of the $65,000 term note shall also constitute a default of the mortgage which will allow Florida Wood to initiate foreclosure of the personal residence.
    D) A sale of St. John Lumber Co., Inc. which is out of the ordinary course, (ie. a sale of the assets), or a transfer or sale of common stock of St. John Lumber Co., Inc., which does not result

> in a redemption of all the preferred shares in
> full together with payment in full of any unpaid
> dividends shall constitute a default of the
> mortgage which will allow Florida Wood to
> foreclose against the personal residence.

(Agreement ¶¶ 2,3, Ex. 3, Mot. Summ. J.)  The Agreement provides
that the Hedges will personally guarantee repayment of the
instruments created in the debt restructuring transaction.  The
agreement also secures that guarantee with the Mortgage on the
Property.  The Agreement's language concerning a sale of SJL out
of the ordinary course contemplates that SJL might be liquidated,
and expresses the parties' intent that the Hedges would
nonetheless be obligated to repay the entire outstanding debt.

In addition, the Hedges signed a personal guarantee (the
"Personal Guarantee") backing each of the components of the
restructured debt.  The Hedges promised to repay the Note and its
interest if SJL did not, they guaranteed the $150,000 cash
payment, and they also guaranteed the payment of the stock's
redemption value, along with payment of any overdue dividends.[2]

---

[2] The debt restructuring documents do not specify a date by which SJL or
the Hedges were obligated to redeem the stock.  However the Agreement does
provide:

> Upon the sale of the personal residence prior to satisfaction of
> the SBA Loan, the sale of the stock or business of Lumber Company
> or the expiration of the fifteen (15) year term of the SBA loan,
> Florida Wood would thereupon surrender the preferred stock to
> Lumber Company to the extent any of the indebtedness recited in
> the Mortgage is paid.

(Agreement ¶(3)(B), Ex. 3, Mot. Summ. J.) The Mortgage further provides:

A mortgage deed (the "Mortgage") secured the Hedges'
Personal Guarantee. The Mortgage covered the personal residence
of the Hedges, located on St. John, U.S. Virgin Islands, which
was described as Parcel No. D Estate Gift and Regenback, No. 13
and 14 Cruz Bay Quarter ("the Property"). The Mortgage was
recorded on December 23, 1992.

The Mortgage and Agreement listed several conditions, the
occurrence of which would constitute a default. Default would
occur if and when SJL was transferred or sold, out of the
ordinary course, including if its assets were sold, and any of
the following had not taken place: 1) repayment of the Promissory
Note, 2) redemption of the stock, or 3) full payment of the
interest and dividends. Such a default would allow Wood Treaters
to initiate foreclosure against the Property.

Despite restructuring its debt, SJL sought protection
pursuant to Chapter 11 of the bankruptcy code on August 1, 1996.[3]

---

Should all or any part of the Promissory Note not be paid, or the
preferred stock not be redeemed, or the dividends on said stock
which are owed under the Guarantee Agreement not be paid upon the
transfer or sale of any of the common stock of St. John Lumber
Company, Inc. or a sale of the business of St. John Lumber
Company, Inc. not in the ordinary cause [sic], then a default in
this Mortgage shall occur and all of these sums shall be due and
payable under this mortgage.

(Mortgage 2, Ex. 5, Mot. Summ. J.)

[3] Under the doctrine of collateral estoppel, related judicial
proceedings may be relied on by the Court in determining a judgment. *See*
RESTATEMENT (SECOND) JUDGMENTS § 27 (1982). The bankruptcy court issued an order
confirming the sale of SJL's real property assets on May 14, 1998, and an

Wood Treaters sought recovery under the Note in the bankruptcy proceedings.  It filed a $77,277.67 claim.  The bankruptcy court allowed $31,188.81 of that claim.

In 2001, the Thompsons and the Hedges executed a contract pursuant to which the Thompsons agreed to buy the Property from the Hedges.  On May 10, 2002, the Hedges filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. *In re Hedges,* No. 02-00014 (Bankr. D.V.I. May 10, 2002). That petition was later converted to a Chapter 7 proceeding.[4] *In re Hedges,* No. 02-00014 (Bankr. D.V.I. May 17, 2004). Wood Treaters filed an allowed claim for $947,759.43.  However, Wood Treaters' claim value was reduced to $719,429.53 as of January 31, 2005.

The Thompsons initiated an adversary proceeding in the Bankruptcy Court against the Hedges, seeking specific performance of the contract to sell the Property. *Thompson v. Hedges*, No. 04-00001 (Bankr. D.V.I. Mar. 16, 2004). The adversary proceeding resulted in a court approved settlement between the Thompsons, the Hedges, and the Chapter 7 trustee.  Pursuant to that agreement, the Thompsons agreed to assume the Hedge's liability

---

order confirming SJL's second amended plan of reorganization on June 11, 1998. The bankruptcy proceeding was concluded on August 16, 2000. *In re St. John Lumber, Co.,* No. 96-00015 (Bankr. D.V.I. Aug. 16, 2000).

[4] The Hedges were granted a discharge of their debts on June 6, 2006. The bankruptcy proceeding was concluded on November 1, 2007.

on amounts filed as secured claims, including Wood Treaters'
claim. They further agreed that all secured claimants would
retain their liens, which would remain attached to the Property.
The Thompsons further agreed to pay up to $50,000 toward
completing distribution and payments of the trustee's commission.
Finally, the Thompson's agreed to pay $1 for the Property.

On April 1, 2006, the Hedges conveyed the property to the
Thompsons by quitclaim deed.

The Thompsons filed this action on December 7, 2006. They
seek injunctive relief requiring Wood Treaters to release the
mortgage lien on the Property and prohibiting Wood Treaters from
claiming any interest in the Property. They further seek a
declaratory judgment that Wood Treaters' lien on the Property is
extinguished. The Thompsons also seek damages for slander of
title, and for lost rental income based on their inability to
rent the Property while it is impaired by a potential
foreclosure.

Wood Treaters filed a foreclosure counterclaim against the
Thompsons. Wood Treaters claims that its outstanding, valid lien
amounts to $892,431.81 as of October 16, 2009.

Wood Treaters filed a motion to bring a third party
complaint against Coastal Supply, in compliance with V.I. Code
Ann. tit. 28, § 532. Wood Treaters claims Coastal Supply holds a

lien junior to Wood Treaters' on the Property.  That motion was granted on March 18, 2008.

Coastal Supply's judgment lien against the Property is in the principal amount of $35,294.96.  Coastal Supply asserts that its lien remains valid and unpaid against the property.  Coastal Supply claims that it recorded its judgment lien against the Property on or about May 11, 2000.  It further claims that the principal balance, plus interest, less $3000 paid by the Thompsons, remains due.  Coastal Supply filed a cross claim seeking foreclosure of the Property to satisfy its lien.

Wood Treaters now seeks summary judgment on its foreclosure counterclaim as well as against the Thompsons on all of their claims -- for injunctive relief, declaratory judgment, and slander of title.  Coastal Supply also seeks summary judgment against the Thompsons on its foreclosure cross claim.  Coastal Supply concedes that its lien on the Property is junior to Wood Treaters'.

## II. <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789

F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met, it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## III. <u>ANALYSIS</u>

### A. Wood Treaters' Foreclosure Counterclaim

Wood Treaters seeks summary judgment on its counterclaim for foreclosure of its mortgage lien against the Property. To

prevail on a foreclosure claim, the plaintiff must show (1) the debtor executed a promissory note and mortgage, (2) the debtor is in default under the terms of the note and mortgage, and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *See, e.g.*, *National Union Fire Ins. Co. v. Saunders*, 899 F. Supp. 452, 455 (C.D. Cal. 1993) ("To establish a prima facie case for recovery under a promissory note, the holder must demonstrate execution of the note and a default in payment pursuant to its terms."); *See also* Am. Jur. 2d *Mortgages* § 633 (2008) (foreclosure requires valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract).

Here, Wood Treaters submits that there are no genuine issues regarding the following facts: (1) the Hedges personally guaranteed repayment of the restructured $515,000 SJL debt, (2) their guarantee was secured by the Mortgage on the Property, (3) the Thompsons assumed the Hedges' obligations, as secured by the Mortgage, (4) the Hedges' obligations have not been fulfilled, and (5) Wood Treaters is authorized to foreclose on the Property.

## 1. The Hedges' Personal Guarantee

To meet its summary judgment burden, Wood Treaters points to the debt restructuring documents in order to show that the Hedges' personally guaranteed SJL's restructured debt. The Court reads the debt restructuring documents to discern the intent of

the contracting parties. *See Garden State v. Mitchell Mfg. Group,*

*Inc.*, 273 F.3d 332, 335 (3d Cir. 2001) ("The paramount goal of

contract interpretation is to determine the intent of the

parties.")(citation omitted).

The Personal Guarantee provides evidence that the Hedges had

personally guaranteed repayment of the different components of

the restructured debt:

> Whereas, Corporate Debtor [SJL] desires Creditor [Wood
> Treaters] to restructure the $515,000.00 debt Corporate
> Debtor acknowledges it owes to Creditor . . . .
> 1) Guarantors [the Hedges] guarantee repayment to
> creditor of a note made by Corporate Debtor to creditor
> in the principal amount of Sixty Five Thousand Dollars
> ($65,000.00), with interest at nine percent (9%) per
> annum on the unpaid balance. . . . If Debtor defaults
> in any payment of such indebtedness according to the
> terms of the attached note Guarantors will pay to
> Creditor the total balance due on the Note at the time
> of such default on demand.
> 2) Guarantors further guarantee to pay the obligation
> of Corporate Debtor to redeem of [sic] the $300,000.00
> preferred stock Creditor received as part of its Debt
> Restructuring Agreement with Corporate Debtor and
> additionally at the time of redemption to pay any of
> the annual 9% dividends the corporate debtor failed to
> pay prior to redemption of the preferred stock.

(Personal Guarantee, ¶ 1 and § 1, Ex. 4, Mot. Summ. J.)  In the

Personal Guarantee, the Hedges further waived,

> any defense arising by reason of any disability or
> other defense of the Corporate Debtor by reason of the
> cessation for any cause whatsoever of the liability of
> Corporate Debtor except payment of the underlying debt
> of $515,000 plus interest and any other sums due under
> the Note and Security Agreement, the preferred stock,
> the Mortgage Deed or this Guarantee Agreement.

(Personal Guarantee, § 6.)  This section of the Personal
Guarantee addresses the failure of SJL to pay its debts for any
reason, including the situation in which SJL filed for bankruptcy
protection and could no longer pay its debts.  It obligates the
Hedges to repay the entire debt, plus dividends and interest,
regardless of the fate of SJL.

The Hedges' were not relieved of the obligation to repay
that debt as a result of SJL's bankruptcy because they were not
the debtors in that proceeding.  *See* 11 U.S.C. § 524(e)
("discharge of a debt of the debtor does not affect the liability
of any other entity on, or the property of any other entity for,
such debt").  As such, neither the Mortgage nor the Personal
Guarantee were affected by the SJL bankruptcy.

### 2. The Effect of the Bankruptcy Proceedings on the Mortgage Securing the Hedges' Guarantee

The Personal Guarantee was secured by a mortgage deed on the
Property. (Personal Guarantee, ¶ 4; Mortgage, Ex. 5, Mot. Summ.
J.)  Wood Treaters provides the affidavit of its president,
Stephen Rose ("Rose"), who avers that Wood Treaters never
received the balance due on the Note, or any of the redemption or
dividend payments on the stock.  (Rose Aff. ¶ 11-15, Ex. 1 Mot.
Summ. J.)

The Mortgage secures a debt of $300,000 owed to Wood
Treaters by the Hedges, plus "such other sums which might in the

future be owed by virtue of the failure of St. John Lumber

Company, Inc. to pay dividends on its preferred stock . . . ."

(Mortgage.)  The Mortgage Deed further provides,

> should all or part of the Promissory Note not be paid,
> or the preferred stock not be redeemed, or the
> dividends on said stock which are owed under the
> Guarantee Agreement not be paid upon the transfer or
> sale of any of the common stock of St. John Lumber
> Company, Inc. not in the ordinary cause [sic], then a
> default in this Mortgage shall occur and all of these
> sums shall be due and payable under this mortgage.

(Mortgage.)  This language lists the conditions of default that

would allow a foreclosure to proceed.

### a. The Hedges' Chapter 7 Proceeding

The Mortgage would only have been eliminated if some

proceeding had invalidated it.  The general rule in a Chapter 7

bankruptcy is that a "creditor's lien stays with the real

property until the foreclosure." *Dewsnup v. Timm*, 502 U.S. 410,

418 (1992).  As such, while the debts owed by the Hedges were

discharged in their Chapter 7 bankruptcy, Wood Treaters' lien on

the property survived.

### b. The Saint John Lumber Chapter 11 Proceeding

The rule that liens survive bankruptcy is not immutable.  In

*In re Penrod,* the United States Court of Appeals for the Seventh

Circuit recognized that a "secured creditor does not, by

participating in the bankruptcy proceeding through filing a

claim, surrender his lien. But this is not to say that the lien is sure to escape unscathed from the bankruptcy." *In re Penrod*, 50 F.3d 459, 462 (7th Cir. 1995). That court further noted that if the secured claim is challenged in the bankruptcy proceeding, and the Court denies the claim, the creditor can lose the lien through collateral estoppel. *Id.* (citations omitted). Alternatively, a secured creditor can be forced by a reorganization plan to swap his lien for another interest. *Id.* (citations omitted) Further, the creditor might consent to the lien's discharge. *Id.* (citations omitted).

As *Penrod* makes clear, a lien is only affected by bankruptcy if the secured creditors rights are determined in that proceeding. In this case, SJL's reorganization plan did not even contemplate the existence of Wood Treaters' lien, much less invalidate it. *See generally* SJL Second Am. Plan of Reorganization (Ex. 15 Mot. Summ. J.) (detailing creditors and their claims against debtor, St. Johns Lumber Co., and plans to repay creditors). As such the general rule holds true in this case, and Wood Treaters' lien survived SJL's bankruptcy unscathed.

### 3. Default of Debt Obligations

Either a failure to satisfy the Note or a failure to redeem stocks would constitute a default that could trigger foreclosure.

Wood Treaters argues that both instances of default have occurred.

With respect to the Note, Wood Treaters points to the affidavit of Stephen H. Rose to demonstrate that there is no dispute regarding the fact that Wood Treaters has not been fully repaid on the Note. Rose avers that neither the Note nor the obligation to pay the value of the stock or dividends were fully satisfied. (Rose Aff. ¶¶ 3, 11-14, Ex. 1, Mot. Summ. J.) Rose also avers that the total amount due to Wood Treaters and remaining unpaid under the Personal Guarantee secured by the Mortgage is $892,431.81 as of October 16, 2009. (*Id.* at ¶ 8.)

Indeed, the Note carried a 15 year term and was executed on December 10, 1992. As such, the Note's maturity date was in 2007. According to Rose, the Note remains unpaid. The obligation to pay the Note was shared. In the first instance, SJL was obligated to pay pursuant to the express terms of the Note. The only thing that could have eliminated the obligation to pay the Note would have been a bankruptcy discharge. As discussed above, neither the lien nor the debt it secured were discharged in SJL's Chapter 11 reorganization.

The Hedges were also obligated to pay the Note in accordance with the Guarantee. While the underlying debt may have been discharged in the Hedges' Chapter 7 bankruptcy, it is beyond

peradventure that such an outcome does not preclude foreclosure
of a lien. *See e.g.*, *Johnson v. Home State Bank,* 501 U.S. 78, 83
(1991) (noting that even following a discharge of debtor's
personal liability in Chapter 7 proceedings, the creditor retains
the right to foreclose on a mortgage). Additionally such an
outcome does not eliminate an obligation assumed by a non
bankruptcy party. *See* 11 U.S.C. § 524(e)(2009)("Except as
provided in subsection (a)(3) of this section, discharge of a
debtor does not affect the liability of any other entity on, or
the property of any other entity for, such debt."). Thus, to the
extent the Thompsons assumed the obligation of the Hedges, the
obligation survives.

With respect to the stock obligation, The Agreement
provides:

> A sale of St. John Lumber Co., Inc., which is out of
> the ordinary course, (ie. a sale of the assets), or a
> transfer or sale of commons [sic] stock of St. John
> Lumber Co., Inc., which does not result in a redemption
> of all the preferred shares in full together with
> payment in full of any unpaid dividends shall
> constitute a default of the mortgage which will allow
> Florida Wood to foreclose against the personal
> residence.

(Agreement ¶ 3(D).)

SJL's second amended reorganization plan (the
"Reorganization Plan") stated "[t]his plan of Reorganization is a
plan of self liquidation by which debtor company will liquidate

its assets . . . ." (Ex. 15 Mot. Summ. J.)  The bankruptcy court
subsequently issued an order confirming the Reorganization Plan,
*In re St. John Lumber, Co.,* No. 96-00015 (Bankr. D.V.I. June 11,
1998), an order confirming the sale of SJL's real property, *In re
St. John Lumber, Co.*, No. 96-00015 (Bankr. D.V.I. May 14, 1998),
and a final decree stating that the Reorganization Plan had been
substantially consummated, *In re St. John Lumber, Co.,* No. 96-
00015 (Bankr. D.V.I. Aug. 16, 2000). The sale of assets has been
deemed one of the "natural and inevitable consequences of
liquidation." *In re New Century TRS Holdings, Inc.*, 407 B.R. 576,
589(D.Del. 2009).

Pursuant to the terms of the Agreement, when the assets of
SJL were sold and that sale did not result in redemption of the
shares and payment of the dividends, it constituted a default
under the Mortgage.  Rose avers that the shares have never been
redeemed and that Wood Treaters has never received a single
dividend payment. (Rose Aff. ¶ 15.).

## 4. The Thompsons' Assumption of the Hedges' Personal Debt Obligations

In support of its argument that the Thompsons assumed the
personal obligations of the Hedges in the settlement agreement
regarding the Property, Wood Treaters points to the deposition of
Kurt Thompson ("Thompson").  Thompson averred that he understood

that he obtained the Property with liens attached. (Thompson

Depo. 33, Ex. 12, Mot. Summ. J.)  In particular, Thompson

understood that Wood Treaters had a secured lien on the Property

in an amount around $900,000. (*Id.* at 33-35.)  Thompson further

testified that he signed a stipulated settlement (the "Settlement

Stipulation") in which he agreed to acquire the Property subject

to several liens, including Wood Treaters'.

Wood Treaters has also provided the Settlement Stipulation,

signed by the Hedges, the Thompsons, and the trustee of the

Hedges' estate.  It provides, in relevant part,

> [t]he Thompsons will assume the Debtor's liability on
> amounts filed as secured claims in the bankruptcy.  The
> secured claimants identified in the bankruptcy
> proceeding are Firstbank VI (successor to JP Morgan
> Chase Bank), Florida Wood Treaters, Inc. and Coastal
> Supply, Inc. . . . All secured claimants will retain
> their liens which will remain attached to the Property.

(Settlement Stip., ¶ o, Ex. 23, Mot. Summ. J.)

According to the Restatement[5] (Third) of Property:

Mortgages, § 5.1 Transfers with Assumption of Liability:

> (a) "Assumption of liability" means a promise by the
> transferee of mortgaged real estate, whether made to
> the transferor or to the mortgagee, to perform the

---

[5]
   The rules of the common law, as expressed in the restatements of
the law approved by the American Law Institute, and to the extent
not so expressed, as generally understood and applied in the
United States, shall be the rules of decision in the courts of the
Virgin Islands in cases to which they apply, in the absence of
local laws to the contrary.

V.I. CODE ANN. tit. 1, § 4.

obligation secured by the mortgage.
(b) When mortgaged real estate is transferred with
assumption of liability:

    (1) the mortgage remains effective against the
    real estate in the hands of the transferee; and .
    . .

    (3) in the event of a default in the performance of the
    obligation secured by the mortgage, the mortgagee has
    the right . . .
    (ii) to proceed against the transferee personally, to
    the extent of the transferee's liability under the
    assumption agreement, and
    (iii) to enforce the mortgage, and thereafter to
    proceed against the transferor or the transferee
    personally for any deficiency, to the extent of their
    respective liabilities.

Restatement (Third) Property: Mortgages § 5.1.  The Restatement

also provides a useful comment:

    Assumption of liability. The rights and duties of the
    parties following a transfer of mortgaged real estate
    depend on whether the transferee has assumed liability
    on the mortgage and the obligation it secures. The
    transferee's assumption of liability need not be in any
    particular form or follow any particular verbal
    pattern. Any words indicating the transferee's intent
    to undertake personal liability for the obligation will
    suffice. However, the words "subject to the mortgage"
    or the like do not effect an assumption of liability. .
    . . The language of assumption may be placed in a
    separate agreement . . .  or in the deed itself . . . .

Restatement (Third) Property: Mortgages § 5.1 cmt. a.  The

Restatement also provides a useful illustration of the principle:

    1. A borrows $100,000 from B and gives B a promissory
    note for that amount, secured by a mortgage on A's
    house. Subsequently A sells the house to C for
    $125,000. C pays A $25,000 in cash. The contract of
    sale provides "C agrees to take the premises subject to
    the existing mortgage." This language does not
    constitute an assumption of liability by C.

> 2. The facts are the same as in Illustration 1, except
> that the contract of sale provides "C agrees to assume
> the existing mortgage on the premises." This language
> constitutes an assumption of liability by C.

Restatement (Third) Property: Mortgages § 5.1 cmt. a, illus. 1-2.

The language in the Settlement Stipulation expressly provides that the Thompsons assumed the Hedge's liabilities to the secured claimants, including Wood Treaters and Coastal Supply. As such, the Thompsons became liable to each of those secured claimants on their liens. *See, e.g.*, *In re Emerald Oil Co.,* 807 F.2d 1234, 1238-39 (5th Cir. 1987) ("Under Louisiana law, one who assumes a mortgage becomes personally bound thereon, but one who purchases 'subject to' a mortgage incurs no personal liability."); *United States v. McLain*, 769 F.2d 500, 502 (8th Cir. 1985) (noting that a grantee who assumes an outstanding mortgage may be held personally liable, and that "assuming" a mortgage means "assuming and agreeing to pay" the mortgage, absent clear language to the contrary).

## 5. The Thompsons Waived Notice and Demand

In order for a creditor to foreclose on a secured debt, it must give the debtor notice and make a demand for payment, if the debtor has not waived such a requirement. *See Savers Federal Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 n. 6 (5th Cir. 1989) (citation omitted). The Hedges waived their right to

notice and demand. (Personal Guarantee, § 12.)  As the successors
in interest to the Hedges, the Thompsons are also bound by the
waiver of the right to notice and demand. *See* Restatement (Third)
or Property: Mortgages, § 5.1 cmt. a ("Under any of these
[assumption] formulations the transferee will usually be held to
have assumed all covenants and obligations both in the note and
in the mortgage.").

In sum, Wood Treaters has met its summary judgment burden of
showing that there are no genuine issues of material fact and
that it is entitled to judgment as a matter of law.  The burden
now shifts to the Thompsons to show that there is a disputed
material fact.

### 6. The Thompsons' Opposition

Even if the Court were to consider the Thompsons' untimely
opposition, they have not supported their contention that there
are material facts in dispute with adequate, admissible evidence.

The Thompsons do not dispute that the Hedges personally
guaranteed the entire restructured debt.  The Thompsons also do
not dispute that the Hedges' personal guarantee was secured by
the Mortgage on the Property.

Rather, the Thompsons claim that under the terms of the
Mortgage, Wood Treaters' lien on the property was extinguished
when the Bankruptcy Court confirmed SJL's reorganization plan.

The Thompsons provide no admissible evidentiary support for this
proposition.  Further, the discharge of SJL's debts in bankruptcy
did not have any impact on the Hedges' personal obligations. *See*
11 U.S.C. § 524(e) ("discharge of a debt of the debtor does not
affect the liability of any other entity on, or the property of
any other entity for, such debt").  The Court has also reviewed
the Mortgage and sees no viable reading that would support this
conclusion.

The Thompsons also argue that "[b]y operation of law, upon
the filing of the petition under Chapter 11 by SJL, at the
commencement of its Chapter 11 bankruptcy, the 3,000 shares in
SJL were redeemed for their book value on the date of filing of
the petition. . . . Upon confirmation of the Chapter 11 second
amended plan in the SJL bankruptcy, the value of the 3,000 shares
of preferred [stock] in SJL owned by the defendant was zero."
(Thompsons Proposed Counter-Statement of Material Facts ¶ 15-16.)
The Thompsons baldly assert this proposition without a single
citation to legal authority or to the record.[6]  This Court was

---

[6] Further, it is clear that the preferred shares in the debt
restructuring transaction between SJL and Wood Treaters were really debt under
another name.  Stock represents an ownership interest, a right to a share in
the distribution of assets of a corporation at liquidation, and may represent
the right to participate in management. *United States v. Evans*, 375 F.2d 730,
731 (9th Cir. 1976).  On the other hand, a debt instrument has a definite
obligor, a definite obligee, a definitely ascertainable obligation, and a time
of maturity that is either definite or that will become definite.  *Id.*  In
deciding whether an instrument represents an equity stake or a debt,

[w]hich course a court discerns is typically a commonsense

also unable to find legal support for that principle.

The Thompsons also argue that Wood Treaters' foreclosure action is barred by the statue of limitations. Foreclosure is a separate and distinct action from debt, with its own limitations period. *See UMLIC VP LLC v. Matthias*, 364 F.3d 125, 130-31 (3d Cir. 2004)(rejecting the rule that a foreclosure action shares the statute of limitations of the underlying debt, and adopting the stance that even when a debt action is time barred, the mortgagee may proceed to foreclose); *see also St. Croix Drive-In, Inc.*, 552 F. Supp. at 1251 ("The law is clear that separate

---

conclusion that the party infusing funds does so as a banker (the party expects to be repaid with interest no matter the borrower's fortunes; therefore, the funds are debt) or as an investor (the funds infused are repaid based on the borrower's fortunes; hence, they are equity). Form is no doubt a factor, but in the end it is no more than an indicator of what the parties actually intended and acted on.

*Id.*
Indeed, the Agreement provided "WHEREAS, the Hedges desire to obtain a Small Business Administration Loan ("SBA Loan") . . . ." (*See* Agreement at 1.) The 9% dividends were functionally interest payments on the $300,000 loan. Nothing in the loan restructuring documents indicates that Wood Treaters was given an ownership or management stake in SJL, or that the value of the shares could ever increase above face value if SJL's value increased. The preferred stocks were redeemable by a definite obligee to a definite obligor. As such, it is clear that the parties intended to restructure $300,000 of the original debt into another form of debt, not to issue an equity stake. Based on a functional analysis of the debt restructuring documents, the Court concludes that the preferred shares were more a form of debt obligation than stock. *See, e.g., id* at 730-31 (reversing district court construction of estate in housing cooperative as stock, and ruling interest was "more a form of debt-obligation" because "the only characteristic of stock is participation in management. Yet we have present all the characteristics of a debt-obligation. There is a definite obligor. . . . a definite obligee . . . . a definitely ascertainable obligation . . . . and a time of maturity, either definite or that will become definite . . . .")

actions are available in actions for debt and against a

mortgage") *aff'd on other grounds* 728 F.2d 177 (3d Cir. 1984).

Wood Treaters' foreclosure action may proceed if it was

filed within the applicable limitations period. *See id.* at 1248

(allowing foreclosure against drive-in corporations where there

was no suggestion the statue of limitations had run). Pursuant

to Title 5, § 32 of the Virgin Islands Code, "[a]n action for the

determination of any right or claim to or interest in real

property shall be deemed within the limitations provided for

actions for the recovery of the possession of real property."

V.I. CODE ANN. tit. 5, § 32(b). The relevant section of the

Virgin Islands Code outlining the period for the recovery of real

property prescribes a limitations period of 20 years for the

commencement of the action. V.I. CODE ANN. tit. 5, § 31(1). As

such, the limitation period for a foreclosure action in the

Virgin Islands is 20 years.

The Mortgage was executed on December 21, 1992,

approximately 17 years ago. The Mortgage and Agreement listed

several conditions, the occurrence of which would constitute a

default. Default would occur if and when SJL was transferred or

sold, out of the ordinary course, and any of the following had

not taken place: 1) repayment of the Promissory Note, 2)

redemption of the stock, or 3) full payment of the interest and

dividends.  The Thompsons default occurred after execution of the

Mortgage that defined a default event.  As such, the statute of

limitations has not run on Wood Treaters' foreclosure action.

The Thompsons have failed to meet the burden that shifted

to them upon Wood Treaters' showing that there are no material

facts in dispute.  Wood Treaters is entitled to judgment as a

matter of law on its foreclosure claim.

**B. The Thompsons' Declaratory and Injunctive Relief Claims**

Wood Treaters also seeks summary judgment on Count I of the

Thompsons' complaint, which seeks an order compelling Wood

Treaters to release its mortgage lien on the Property, and a

declaratory judgment that the lien is extinguished.

In support of its motion for summary judgment, Wood Treaters

submits that the Thompsons expressly assumed its valid Mortgage

on the Property, and that nothing has extinguished that

obligation.

As discussed above, Wood Treaters' lien is valid.  As such,

there is no basis for the Court to compel Wood Treaters to

release the lien.  There is also no basis for a declaratory

judgment that the lien has been extinguished. *See, e.g.*, *Vogel v.*

*Veneman*, 276 F.3d 729 (5th Cir. 2002) (affirming district court's

grant of summary judgment for lien holder on homeowner's action

for declaratory judgment that the lien was invalid, because lien

was in fact valid).

Wood Treaters having met its burden, the Thompsons must show that there is some material fact in dispute. Again, the Thompsons have failed to meet that burden. The Thompsons simply rest on their arguments in relation to the validity of Wood Treaters' lien, which were discussed above.

Accordingly, the Court finds that Wood Treaters is entitled to judgment as a matter of law, and will grant summary judgment for Wood Treaters on Count I of the Thompsons' complaint.

## C. Slander of title

Wood Treaters further seeks summary judgment on Count II of the Thompsons' complaint, which seeks damages for slander of title. To prove slander of title, a plaintiff must show (1) publication, (2) with malice, (3) of false allegations concerning the plaintiff's property, (4) causing pecuniary harm. *System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977) (discussing elements under New Jersey law).

In order to meet its summary judgment burden, Wood Treaters points out that it has asserted a valid lien. As a legal matter, truth is a defense to a slander of title claim. *See Markowitz v. Republic Nat'l Bank*, 651 F.2d 825, 828 (2d Cir. 1981) ("A defendant who asserts a claim against property in good faith under an honest impression of its truth will not be penalized . .

. .") (quotation and citation omitted).  Wood Treaters argues

that it recorded a valid lien when it recorded the Mortgage Deed

in 1992, and that as such the Thompsons cannot show false

publication.

Consistent with the discussion regarding Wood Treaters'

foreclosure claim, the Court finds that Wood Treaters has shown

that any assertion that its lien was valid made by Wood Treaters

was true.  The Thompsons did not refute this showing.

Wood Treaters is entitled to summary judgment because it has

shown that, as a matter of law, the Thompsons will be unable to

prove false publication. *See Celotex Corp. v. Catrett*,  477 U.S.

317, 322 (1986)("Rule 56(c) mandates the entry of summary

judgment . . . against a party who fails to make a showing

sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden

of proof at trial").

Accordingly, the Court finds that Wood Treaters is entitled

to judgment as a matter of law, and will grant summary judgment

for Wood Treaters on Count II of the Thompsons' complaint.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Wood

Treaters' motion for summary judgment as to its foreclosure

claim, as well as grant summary judgment in Wood Treater's favor

as to Count I of the Thompsons' complaint, the declaratory and

injunctive relief claims, and Count II of the Thompsons'

complaint, the slander of title claim.

An appropriate Order follows.


S\_____

**CURTIS V. GÓMEZ**
**Chief Judge**