DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| RICHARD O. THOMPSON, KURT W. THOMPSON, AND KAY ALYSON THOMPSON,<br><br>    Plaintiffs,<br>    Counterclaim<br>    Defendants<br><br>v.<br><br>FLORIDA WOOD TREATERS, INC.,<br><br>    Defendant, Counter<br>    Claimant | Civil No. 2006-224 |
| FLORIDA WOOD TREATERS, INC.<br><br>    Third Party Plaintiff,<br><br>v.<br><br>COASTAL SUPPLY, INC.<br><br>    Third Party Defendant. | |

**ATTORNEYS**

**Ronald W. Belfon, Esq.**
St. Thomas, U.S.V.I.
    *for Richard O. Thompson, Kurt W. Thompson, and Kay Alyson Thompson,*

**H.A. Curt Otto, Esq.**
St. Croix, U.S.V.I.
    *for Coastal Supply, Inc.*

**Christian A. Peterson, Esq.**
**Todd H. Newman, Esq.**
**Samuel T. Grey, Esq.**

St. Croix, U.S.V.I.
    *for Florida Wood Treaters, Inc.*

**MEMORANDUM OPINION**

**GÓMEZ, C.J.**

Before the Court is the motion of plaintiffs Richard O. Thompson, Kurt W. Thompson, and Kay Alyson Thompson (jointly, the "Thompsons") to stay the execution of this Court's judgment, pending appeal. Also before the Court is the motion of defendant Florida Wood Treaters ("Wood Treaters") for clarification of this Court's order designating this case as a suspense matter.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court has already set forth the factual and procedural background of this case in detail. *See Thompson et al. v. Florida Wood Treaters, Inc.*, No. 2006-224, 2009 U.S. Dist. LEXIS 112933 (D.V.I. Dec. 6, 2009). The Court therefore recites only those facts necessary for resolution of the pending motions.

In 1992, William Hedges and Marianne Hedges ("the Hedges") owned Saint John Lumber, Inc. ("SJL"). By 1992, SJL had incurred a debt of $515,000, which it owed to Wood Treaters. In December of 1992 the Hedges and SJL entered into an agreement with Wood

---

[1] Given the Court's ruling herein on the motion to stay execution, there is no need for further clarification. The motion for clarification, accordingly, will be denied.

Treaters to restructure the $515,000 debt (the "Agreement").

Under the Agreement, SJL immediately paid $150,000 in cash to Wood Treaters. SJL also executed a $65,000 promissory note (the "Note" or "Promissory Note"). Pursuant to the Note, SJL promised to repay $65,000 over the course of 15 years, along with 9% annual interest, in monthly installments. The Note was secured by the fixtures and equipment of SJL. Wood Treaters further agreed that it would reduce SJL's debt by $300,000 in exchange for $300,000 worth of preferred stock in SJL. The stock was to pay a 9% dividend, or $27,000, annually.

The Hedges agreed to personally guarantee repayment of the instruments created in the debt restructuring transaction. The Agreement also secures that guarantee with a Mortgage on the personal residence of the Hedges, located on St. John, U.S. Virgin Islands, described as Parcel No. D Estate Gift and Regenback, No. 13 and 14 Cruz Bay Quarter ("the Property").

A mortgage deed (the "Mortgage") covered the Property, and was recorded on December 23, 1992.

Despite restructuring its debt, SJL sought protection pursuant to Chapter 11 of the bankruptcy code on August 1, 1996. Wood Treaters sought recovery under the Note in the bankruptcy proceedings. It filed a $77,277.67 claim. The bankruptcy court allowed $31,188.81 of that claim.

In 2001, the Thompsons and the Hedges executed a contract pursuant to which the Thompsons agreed to buy the Property from the Hedges. On May 10, 2002, the Hedges filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. *In re Hedges,* No. 02-00014 (Bankr. D.V.I. May 10, 2002). That petition was later converted to a Chapter 7 proceeding.[2] *In re Hedges,* No. 02-00014 (Bankr. D.V.I. May 17, 2004). Wood Treaters filed an allowed claim for $947,759.43. However, Wood Treaters' claim value was reduced to $719,429.53 as of January 31, 2005.

The Thompsons initiated an adversary proceeding in the Bankruptcy Court against the Hedges, seeking specific performance of the contract to sell the Property. *Thompson v. Hedges*, No. 04-00001 (Bankr. D.V.I. Mar. 16, 2004). The adversary proceeding resulted in a court approved settlement between the Thompsons, the Hedges, and the Chapter 7 trustee. The settlement was signed on September 16, 2005. Pursuant to that agreement, the Thompsons agreed to assume the Hedge's liability on amounts filed as secured claims, including Wood Treaters' claim. They further agreed that all secured claimants would retain their liens, which would remain attached to the Property.

On April 1, 2006, the Hedges conveyed the property to the

---

[2] The Hedges were granted a discharge of their debts on June 6, 2006. The bankruptcy proceeding was concluded on November 1, 2007.

Thompsons by quitclaim deed.

The Thompsons filed this action on December 7, 2006. They sought injunctive relief requiring Wood Treaters to release the mortgage lien on the Property and prohibiting Wood Treaters from claiming any interest in the Property. They further sought a declaratory judgment that Wood Treaters' lien on the Property was extinguished.

Wood Treaters filed a foreclosure counterclaim against the Thompsons. Wood Treaters claimed that its outstanding, valid lien amounted to $892,431.81 as of October 16, 2009.

Wood Treaters filed a motion to bring a third party complaint against Coastal Supply, in compliance with V.I. CODE ANN. tit. 28, § 532. The parties agree that Coastal Supply holds a lien junior to Wood Treaters' on the Property.

Coastal Supply's judgment lien against the Property is in the principal amount of $35,294.96. Coastal Supply asserts that its lien remains valid and unpaid against the property. Coastal Supply claims that it recorded its judgment lien against the Property on or about May 11, 2000. It further claims that the principal balance, plus interest, less $3000 paid by the Thompsons, remains due. Coastal Supply filed a cross claim seeking foreclosure of the Property to satisfy its lien.

Wood Treaters sought summary judgment on its foreclosure

counterclaim as well as against the Thompsons on all of their claims. By memorandum opinion and order filed December 6, 2009, the Court granted summary judgment for Wood Treaters on its claims in the amount of $892,431.81, and against the Thompsons on all of their claims.

The Thompsons have filed a notice of appeal from this Court's order. Now, the Thompsons seek to stay execution of that order pending appeal.

The Court placed this matter on its suspense docket following the Thompsons' notice of appeal. Wood Treaters filed a motion for clarification essentially asking whether it can execute on this Court's judgment during the pendency of the appeal. Wood Treaters also seeks a status conference.

## II. ANALYSIS

**A. Stay Pending Appeal**

When evaluating a motion for a stay pending an appeal, a court should consider: (1) whether the stay applicant made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will suffer irreparable injury absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949

F.2d 653, 658 (3d Cir. 1991). "[T]he traditional stay factors contemplate individualized judgments in each case." *Hilton*, 481 U.S. at 777. "Where the latter three factors favor a stay, [an applicant] need only demonstrate a substantial case on the merits to warrant issuance of a stay[.]" *Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 190 (D.V.I. 1997) (quotation marks and citation omitted).

A stay pending appeal has been described as an extraordinary remedy. *See United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978); *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973) (citing *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685, 686 (5th Cir. 1968)).

### 1. Likelihood of Success on the Merits

The Thompsons argue that there is great likelihood they will succeed on the merits of their appeal because Wood Treaters' foreclosure counterclaim is barred by the statute of limitations. The Thompsons also argue that this Court erred in valuing the underlying debt.

#### a. Statute of Limitations

An action on a contract must be commenced within six years of accrual. V.I. CODE ANN. tit. 5, § 31(3). Debt actions are subject to the six year limitations period for contract actions. *Bank of Nova Scotia v. St. Croix Drive-In Theatre, Inc.*, 552 F.

Supp. 1244, 1251 (D.V.I. 1982).

However, foreclosure is a separate and distinct action from debt, with its own limitations period. *See UMLIC VP LLC v. Matthias*, 364 F.3d 125, 130-31 (3d Cir. 2004)(rejecting the rule that a foreclosure action shares the statute of limitations of the underlying debt, and adopting the stance that even when a debt action is time barred, the mortgagee may proceed to foreclose); *see also St. Croix Drive-In*, 552 F. Supp. at 1251 ("The law is clear that separate actions are available in actions for debt and against a mortgage.") *aff'd on other grounds* 728 F.2d 177 (3d Cir. 1984).

Pursuant to Title 5, § 32 of the Virgin Islands Code, "[a]n action for the determination of any right or claim to or interest in real property shall be deemed within the limitations provided for actions for the recovery of the possession of real property." V.I. CODE ANN. tit. 5, § 32(b). The relevant section of the Virgin Islands Code outlining the period for the recovery of real property prescribes a limitations period of 20 years for the commencement of the action. V.I. CODE ANN. tit. 5, § 31(1). As such, the limitation period for a foreclosure action in the Virgin Islands is 20 years.

Debt and foreclosure actions accrue on the date of default. *St. Croix Drive-In Theatre, Inc.*, 552 F. Supp. at 1251. The

dates of the Hedges and the Thompsons' defaults are not clear from the record.[3]

Nonetheless, the Court can determine that this foreclosure action was timely initiated. Wood Treaters commenced its foreclosure action on February 15, 2007, when it filed its answer and counterclaims in this action. The debt restructuring instruments were executed in December of 1992, less than 15 years earlier.

The date the cause of action accrued against the Hedges under the Personal Guarantee and Mortgage must have been some time after those instruments were executed. *See Small Business Administration v. Kurtz*, 525 F. Supp. 734, 740 n. 10 (D.C. Pa.

---

[3] The Thompsons assert that Wood Treaters' foreclosure action accrued as early as 1996, and no later than 1998. The Thompsons assert that any of four events could have triggered the running of the statute of limitations: First, installments under the Note being due but unpaid; Second, SJL going into bankruptcy; Third, the date SJL's bankruptcy plan was confirmed; Fourth, the sale of SJL by operation of law, not in the ordinary course of business. In support, they point to the mortgage. The Mortgage Deed provides,

> should all or any part of the Promissory Note not be paid, or the preferred stock not be redeemed, or the dividends on said stock which are owed under the Guarantee Agreement not be paid upon . . . a sale of the business of St. John Lumber Company, Inc., not in the ordinary cause [sic], then a default in the Mortgage shall occur and all of these sums shall be due and payable under this mortgage.

(Mortgage 2.)
Wood Treaters argued on summary judgment that its right to foreclose against the Hedges accrued only after SJL's obligation to redeem the stock arose, and it failed to do so, triggering the Hedges' obligation to pay. However, the exact date for redemption is not set by the debt restructuring instruments. Wood Treaters argued the date for redemption is specified in section 3(B) of the Agreement. However, that section simply specifies a time at which Wood Treaters would have been obligated to turn over stock to SJL equal to any amounts of indebtedness that had already been repaid.

1981)(explaining that action accrues against guarantor when it refuses demand for payment under the guaranty instrument). As such, Wood Treaters' action was initiated within 15 years of the date it accrued. Accordingly, Wood Treaters foreclosure action was filed within the applicable limitations period. *See, e.g.*, *Am. Trucking Assoc., Inc. v. Smith*, 496 U.S. 167, 222 (1990)("Without deciding the correct statute of limitations period ourselves, we held that respondent's claim was not time barred because it was timely filed . . . .").

### b. Value of the Debt

The Thompsons argue that they are not liable for repayment of any of the SJL debt that had been restructured into preferred stock. The Thompsons essentially rehash the argument they made at the summary judgment stage that "[b]y operation of law, upon the filing of the petition under Chapter 11 by SJL, at the commencement of its Chapter 11 bankruptcy, the 3,000 shares in SJL were redeemed for their book value on the date of filing of the petition. . . . Upon confirmation of the Chapter 11 second amended plan in the SJL bankruptcy, the value of the 3,000 shares of preferred [stock] in SJL owned by the defendant was zero." (Pl.'s Proposed Counter-Statement of Material Facts ¶ 15-16.)

The Court addressed this argument in its memorandum opinion. In short, the Thompsons failed to cite any legal authority for

the proposition that the shares were redeemed for their book value by the occurrence of SJL's bankruptcy. Further, the shares were functionally debt instruments under another name, whose value was not extinguished by the SJL bankruptcy.

The Court finds that the Thompsons have not shown that they are likely to succeed on the merits of their pending appeal. This factor weighs in favor of denying the stay.

**2. Irreparable Injury Absent a Stay**

Even after referring to the legal standard outlined above, the Thompsons fail to address three of the four elements this Court must analyze to assess the propriety of granting a stay pending appeal. The Thompsons failed to address whether they will suffer irreparable injury absent a stay, injury to other parties, and the public interest.

Absent a stay in this matter, Wood Treaters will likely proceed to foreclose on the Property while the Thompsons' appeal is pending. Real estate is considered a unique asset, for which money damages are sometimes inadequate. *See, e.g.*, *O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir.1996) ("monetary relief fails to provide adequate compensation for an interest in real property, which by its very nature is considered unique"). As such, the Thompsons are facing irreparable injury if the Court denies their motion to stay pending the appeal of this matter.

This factor favors a stay.

### 3. Injury to the Other Parties Interested in the Proceeding

Wood Treaters argues that it will suffer substantial financial hardship if the Court grants a stay. Wood Treaters has provided documents from a Superior Court case that indicate that FirstBank, the first priority lien holder, is pursuing a foreclosure action against the same property in that court. Wood Treaters argues that "[u]nless FWT is able to immediately pursue the foreclosure sale of the property to satisfy FWT's judgment, FWT will be forced to purchase the Thompsons' $388,560.46 debt to FirstBank and stop the Superior Court foreclosure action in order to prevent the foreclosure of FWT's second position." (Opp. to Mot. for Stay 5.)

Wood Treaters' position is belied by the filing it has provided from the Superior Court case. Wood Treaters has been named as a junior lien holder, along with Coastal Supply, pursuant to V.I. CODE ANN. tit. 28, § 532. If FirstBank obtains a foreclosure judgment in the Superior Court before the appeal of this matter is adjudicated, Wood Treaters' lien will be prioritized in accordance with Virgin Islands law. Wood Treaters will neither gain nor lose priority based on that proceeding.

Wood Treaters further argues that, given that the Thompsons have not offered to file a supersedeas bond in the amount of the

judgment against them, Wood Treaters will be injured if this case is stayed pending appeal.

Pursuant to Rule 62(d), "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond." Fed. R. Civ. P. 62(d).

"The power of the court to waive the supersedeas bond requirement is exercised . . . only in 'extraordinary circumstances,' and only where alternative means of securing the judgment creditor's interest are available." *Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 192 (D.V.I. 1997). It is the Thompsons' "burden to demonstrate that posting a full bond is impossible or impracticable, and to propose a plan that will provide adequate security for the appellee." *Id*; *see also Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) ("If a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure.").

> Rule [62(d)] plainly dictates that in the ordinary case execution on a judgment for money should not be stayed unless the party that prevailed in the district court

> is secured from loss. The form and amount of the contemplated supersedeas bond is not specified in current Rule 62(d), but former Rule 73(d) provided that such a bond should normally be fixed to satisfy the judgment in full, plus interest, costs, and damages for delay, Fed.R.Civ.P. 73(d), reprinted in 39 F.R.D. 69, 128-29 (1966). Though Rule 73(d) was abrogated when the Federal Rules of Appellate Procedure were established, see 43 F.R.D. 61, 163 (1968); cf. Fed.R.App.P. 8, its standard is still vital.

*United States v. Kurtz*, 528 F. Supp. 1113, 1114-1115 (E.D. Pa. 1981), *aff'd*, 688 F.2d 827 (3d Cir.), *cert. denied*, 459 U.S. 991 (1982).

Here, the Thompsons have not offered any alternative means of securing Wood Treaters' interest. They have also not shown that it would be impracticable to post a full bond. As such, the Court will not waive Rule 62(d)'s bond requirement. Wood Treaters' interest will be protected by a supersedeas bond, and this factor favors a stay.

**4. The Public Interest**

Here, the Court has found that the Thompsons are unlikely to prevail on the merits. As such, "the public interest weighs against issuing a stay, in that the public interest is served neither by a court system clogged with meritless appeals nor by the waste of property which could otherwise be placed into the stream of commerce and put to use by a new owner." *Bank of Nova Scotia*, 964 F. Supp. at 191. At the same time, a foreclosure

sale to satisfy a judgment which potentially could be reversed can only harm the public interest in that it causes ownership upheaval and may cause public confusion about, and distrust of, the legal system.

The Court finds that the public interest supports neither the Thompsons' position, nor Wood Treaters' arguments.

### III. CONCLUSION

While the Court finds the Thompsons' appeal to be unlikely to succeed on the merits, the Thompsons do face irreparable injury from a foreclosure sale. Additionally, Wood Treaters' interests can be protected by requiring the Thompsons to file a supersedeas bond. Accordingly, the Court will grant the Thompsons' motion for a stay upon their filing of a supersedeas bond in the amount of $894,500.97.[4]

The Court will deny as moot Wood Treaters' motion for clarification.

An appropriate order accompanies this opinion.

S\_____
**CURTIS V. GÓMEZ**

---

[4] The Thompsons owed Wood Treaters $892.431.81 as of October 16, 2009. In addition, prejudgment interest of 9% per annum continued to accrue on the $137,944.14 portion of the debt, representing the amount due under the Promissory Note, until judgment was entered on December 6, 2009. That interest is equal to $2,069.16. The Court will require the Thompsons to file a supersedeas bond equal to the amount of the judgment, $892,431.81, plus $2,069.16 in prejudgment interest, for a total bond of $894,500.97.

**Chief Judge**